**Ethy MEHR, Plaintiff–Appellant,**

v.

**STARWOOD HOTELS & RESORTS WORLDWIDE, INC., Defendant–Appellee.**

No. 02–5013.

United States Court of Appeals, Sixth Circuit.

July 23, 2003.

Before CLAY and GIBBONS, Circuit Judges; and DUGGAN, District Judge.*

DUGGAN, District Judge.

In this employment discrimination case, Plaintiff–Appellant Ethy Mehr ("Mehr"), who is Iranian, claims that her employer, Defendant–Appellee Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"), discriminated against her, based on her gender and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by not promoting her and by terminating her. In the alternative, Mehr alleges that she was retaliated against in violation of the Tennessee whistle-blower statute for reporting that her co-workers were drinking on the job. Mehr argues that the district court improperly granted summary judgment on these claims.

In addition, Mehr argues that the district court abused its discretion in denying her second motion to amend the complaint. In that motion, she attempted to add a retaliation claim under federal and state law. Mehr also contends that the district court abused its discretion in denying her first motion to amend the complaint to add claims of age and disability discrimination. Finally, Mehr argues that the district court abused its discretion in granting attorney's fees on a motion to compel against her.

## Background

Mehr's employment with Starwood began in 1994, when she began working for the Sheraton Music City Hotel[1] in Nashville, Tennessee. Mehr worked as a cashier first, then was transferred to a part-time banquet server position. Banquet servers set tables, serve food and drinks during events at the Sheraton, and serve as bartenders. Mehr's status as a banquet server was an on-call position, meaning that once banquet management determined the number of employees needed for a particular night, management would call banquet servers to fill the positions. Once management determined which employees were able to work, banquet managers would determine which employees would work in each position (either bartender or server). According to Hamid Asgari–Rad, a banquet manager, Mehr worked almost every week at the hotel. In addition to her on-call position with

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Starwood Hotels owns the Sheraton. (J.A. at 25).

Starwood, Mehr also worked as a substitute teacher.

In March 1999, Mehr told banquet captain Pius Imafidon to tell Asgari–Rad that she wanted to become a full-time banquet server. Mehr never went to Asgari–Rad directly with her request, even though hotel policy was for Mehr to speak directly to Asgari–Rad about a full-time position. Mehr never became a full-time employee with Starwood.

On April 21, 1999, Mehr came to work and discovered that her assignment had been switched from bartending to floor work because the hotel was short staffed.[2] She then went to Asgari–Rad to complain about her assignment being switched. According to Mehr, when Asgari–Rad refused to change her assignment back, she "thanked him and left." She then claims that he came into the banquet hallway and screamed at her that he would not assign her as bartender anymore. Mehr stated by way of affidavit that she told him "if he did not want me to work, then I would go home," to which Asgari–Rad replied, "Go home!"

That day, Mehr went to see Cindy Moradipour, Director of Human Resources, to complain about Asgari–Rad's "harassment and discrimination." According to Mehr, on April 23, 1999, Moradipour called her and said "everything had been resolved" and that Asgari–Rad would call her. Starwood's account of what happened on April 21, 1999, varies significantly from Mehr's. Asgari–Rad denies screaming at Mehr. In addition, Moradipour claims that during their phone conversation on April 23, 1999,

Mehr said she only wanted to work the bar. Moradipour then told Mehr that the hotel "did not employ banquet servers who only worked on the bar." When Moradipour informed Mehr of this policy, Mehr became angry and stated that if she could not work as a bartender only, she did not want to work at the hotel. Moradipour then agreed to mail Mehr her last paycheck. Mehr denies that she ever insisted on being a bartender and maintains that she never quit her job.

On May 1, 1999, Mehr was mistakenly called into work by an employee who was unaware that Mehr no longer worked at the hotel. Although Mehr did finish her shift that day, she was informed that she would not be called for future shifts. On May 5, 1999, Moradipour and Asgari–Rad filled out Mehr's separation paperwork. The separation paperwork states that Mehr was voluntarily terminated and that "[Mehr] decided she only wants to work bartender [sic]. We don't employ Banquet Service staff to perform only one function."

### Procedural History

Mehr filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about May 18, 1999. The EEOC found no evidence of discrimination. Plaintiff initially filed a complaint pro se on or about March 2, 2000. In that complaint, Mehr alleged that she was discriminated against in violation of Title VII on the basis of race, sex, religion, national origin, and "being short." (J.A. at 17–23).[3] The alleged discriminato-

---

2. Floor work includes serving meals, clearing tables, working the buffet, and helping guests.

3. Although Mehr alleged that she was discriminated against for "being short" in her pro se complaint, that complaint was based solely on Title VII. Starwood's Memorandum in Opposition to Plaintiff's Motion to Amend

Complaint indicates that on April 14, 2000, the district court entered an order dismissing Mehr's claim based on her being short. Although the parties have not included that order in the Joint Appendix, presumably the district court dismissed that claim because discrimination based on "being short" is not cognizable under Title VII. It was not until

ry acts were the termination of Mehr's employment and failure to promote. Subsequently, Mehr hired an attorney and on November 22, 2000, Mehr filed a motion to amend her complaint to add claims of age discrimination under the Age Discrimination and Employment Act (ADEA), disability discrimination under the Americans with Disabilities Act (ADA), failure to promote and discriminatory discharge claims under the Tennessee Human Rights Act (THRA), and a claim under the Tennessee whistle-blower statute for having been discharged for reporting the "public intoxication" of fellow employees. Starwood filed its first motion for summary judgment on December 15, 2000.

A magistrate judge granted the motion to amend in part, and denied it in part. The district court affirmed the magistrate judge's order and denied Starwood's first motion for summary judgment as moot. Specifically, the magistrate judge denied Mehr's motion to add a claim under the ADEA based on futility because Mehr never included an age discrimination charge in her EEOC complaint; therefore, the court would have no jurisdiction over such a claim. Similarly, the magistrate judge found that Mehr's disability claim under the ADA based on her height (4′10″) would also be futile because height is not a disability under the ADA. The magistrate judge did grant Mehr's motion to amend her complaint to add a claim under Tennessee's whistle-blower statute, based on Mehr's allegation that she was discharged for complaining about fellow employees drinking on the job. The magistrate judge also granted leave to amend on the failure to promote and discriminatory discharge claims under the THRA.

In August 2000, Starwood filed a motion to compel Mehr's deposition testimony, based on her refusal to answer questions during her deposition. Mehr had not yet hired an attorney at the time of this deposition. A hearing was held on September 25, 2000, and the magistrate judge granted Starwood's motion to compel. Subsequently, Starwood filed a motion for attorney's fees pursuant to FED. R. CIV. P. 37(a)(4)(A), in the amount of $2,945.00. The district court affirmed the order of the magistrate judge granting attorney fees to Starwood based on the motion to compel.

On July 30, 2001, Mehr filed a second motion to amend her complaint, this time seeking to add retaliatory discharge claims under state and federal law. Mehr alleged that she was discharged for "complaining of discrimination in her employment by the Defendant." Mehr's complaints of discrimination consisted of a discussion with Cindy Moradipour, Sheraton's Director of Human Resources. on April 21, 1999, regarding "Mr. Asgari–Rad's discriminatory treatment." The magistrate judge recommended that Mehr's second motion to amend be denied. This recommendation was adopted by the district court.

On October 19, 2001, Starwood filed a second motion for summary judgment seeking dismissal of all of Mehr's claims. In a memorandum dated November 29, 2001, the district court granted Starwood's motion for summary judgment. As to Mehr's failure to promote claims, the district court found that Mehr did not satisfy the prima facie case requirements because she did not produce evidence that other employees of similar qualifications who were not members of the protected class received promotions. In the alternative, the district court found that even if Mehr

---

Mehr filed her First Amended Complaint that she brought a claim under the Americans with Disabilities Act based on her height.

did meet the prima facie case, she failed to show that Starwood's legitimate non-discriminatory reasons were pretext for discrimination.[4]

As to Mehr's wrongful termination claims, the district court found that Mehr did not meet the prima facie test because she could not show that she was replaced by someone outside of the protected class, or that similarly situated non-protected employees were treated more favorably. In the alternative, the district court concluded that even if Mehr could establish a prima facie case, Starwood articulated a non-discriminatory reason for its decision: Mehr's insubordination in attempting to dictate the terms of her employment.

Finally, the district court dismissed Mehr's claim of retaliatory discharge under Tennessee's whistle-blower statute because Mehr could not demonstrate that her termination was caused by her complaints about co-worker's drinking on the job.

### Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir.2000). Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact for trial unless there is sufficient evidence favoring the nonmoving party, such that a reasonable jury could return a verdict for that party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Phillip Morris Co., Inc.,* 8 F.3d 335, 340 (6th Cir.1993). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Discussion

#### A. Mehr's Title VII and Tennessee Human Rights Act Claims

Title VII and the THRA both prohibit gender and national origin discrimination. 42 U.S.C. § 2000e–2(a)(1); TENN.CODE ANN. § 4–21–401(a)(1). Claims under the THRA are analyzed in the same manner as Title VII claims. *Frizzell v. Southwest Motor Freight,* 154 F.3d 641, 646 (6th Cir. 1998).

The burden is on the plaintiff in an employment discrimination case to establish a prima facie case of discrimination. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer proof of a legitimate, nondiscriminatory reason for the adverse employment action. *Cicero v. Borg–Warner Automotive Inc.,* 280 F.3d 579, 588 (6th Cir.2002). If the defendant meets its burden of producing evidence of a legitimate non-discriminatory reason for the adverse employment action, the plaintiff

---

**4.** Starwood's legitimate non-discriminatory reasons were: 1) its belief that Mehr was not seriously interested in a promotion because she failed to speak with Asgari–Rad directly, and 2) its belief that she already had a job which would disqualify her from a promotion to full-time work.

must then offer enough evidence to create a genuine issue of material fact that the defendant's proffered reason is really a pretext for discrimination. *Id.* at 589.

### 1. Failure to Promote

In order to establish a prima facie case of failure to promote. Mehr must demonstrate that: 1) she is a member of a protected class; 2) she applied for and was qualified for a promotion; 3) she was considered for and denied the promotion; and 4) other employees of similar qualifications who were not members of the protected class received promotions *at the time her request for promotion was denied. Nguyen v. City of Cleveland,* 229 F.3d 559, 562–563 (6th Cir.2000)(emphasis added).

▮ Mehr is a member of a protected class, both as a woman and as an Iranian. In addition, although Mehr never spoke directly with Asgari–Rad about the full-time position, he knew from Imafidon that she expressed interest in the position. The record shows that Asgari–Rad assumed that since Mehr did not come to him directly, she was not that interested in a full-time position. Based on this, it is questionable whether Mehr in fact, applied for the position. However, the Court need not decide the issue because Mehr has failed to meet the fourth part of the prima facie test. As to the fourth prong of the prima facie test, Mehr points to four individuals—Yessica Guerra, Pius Imafidon, Marshell Ruffier, and Teryl Turner, as other employees with similar qualifications who were not members of the protected class and who received promotions.

#### a. *Pius Imafidon, Marshell Ruffier, and Teryl Turner*

None of these individuals satisfy the fourth part of the prima facie case because none were seeking the same promotion, a full-time banquet server position, or any promotion, at the same time as Mehr. Pius Imafidon was a banquet captain, not an on-call server applying for a full-time position. In his sworn declaration dated December 6, 2000. Imafidon stated that he had held the position of banquet captain "for over five years." (J.A. at 456).

Similarly, the record reflects that Marshell Ruffier, also a banquet captain, had held that position since approximately 1995. She was promoted again effective February 4, 2001. Although Teryl Turner was a full-time banquet server, Mehr does not allege that she received the promotion at the time Mehr was denied a promotion. The fact that employees outside the protected class received promotions at some point in time (in the case of Imafidon and Ruffier, several years prior to the commencement of this litigation), and in some cases to positions Mehr never even applied for, is not sufficient to satisfy the prima facie test.

#### b. *Yessica Guerra*

Mehr had expressed interest in a full-time position in March, 1999. Yessica Guerra's starting date as a full-time employee was April 19, 1999. The Court will assume that a full-time banquet server position was open when Mehr inquired about it. However, Guerra does not satisfy the prima facie test because there is no evidence that Guerra and Mehr shared similar qualifications. Mehr argues that Guerra's relevant qualifications are: that she worked for Starwood for less time than Mehr, she was a part-time worker like Mehr, and she also worked full-time at another job. These are not "qualifications" relevant to the position of a full-time banquet server. Therefore, summary judgment was proper on Mehr's failure to promote claim because she has not satisfied the fourth part of the prima facie test, i.e. that a similarly qualified employee outside of the protected

class received a promotion at the time her request was denied.

## 2. Wrongful Termination

In order to establish a prima facie case of wrongful termination, a plaintiff must show: 1) that she is a member of a protected group, 2) that she was subject to an adverse employment decision, 3) that she was qualified for the position, and 4) that she was replaced by someone outside of the protected class. *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995). The fourth part can also be satisfied by showing that similarly situated non-protected employees were treated more favorably. *Id.*

■ As stated previously, Mehr is a member of a protected class. There is a question of fact as to the second part of the prima facie case because although Mehr alleges that she was terminated. Starwood maintains that she voluntarily resigned. The Court is also satisfied that Mehr was qualified for the position she held. As to the fourth part, Mehr has not shown that she was replaced by someone outside of the protected class. Although Mehr argues that Guerra replaced her, the record belies this argument. According to Starwood's employment records, Guerra's starting date for the full-time position was April 19, 1999. However, the incident leading up to Mehr's termination did not take place until two days later on April 21, 1999.

Mehr may also establish a prima facie case by showing that other similarly situated employees outside of the protected class were treated more favorably. Mehr

points to five individuals who she believes were similarly situated, yet treated more favorably: Teryl Turner, Marshell Ruffier, Pius Imafidon, Denise Barrios, and Leopoldo Doniz.

### a. *Teryl Turner and Marshell Ruffier*

Because Starwood's reason for firing her was her insubordination in attempting to dictate the terms of her employment, Mehr concludes that other similarly situated employees include those employees who failed to follow Starwood's policies and procedures, but were treated less harshly, i.e., not terminated.[5] However, case law is clear that Mehr must demonstrate more to satisfy the prima facie case. "Thus, to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d at 583.

Mehr argues that the disciplinary write-ups of Turner and Ruffier show that they are similarly situated. The Court disagrees. Mehr has not demonstrated that she dealt with the same supervisor as Turner and Ruffier. Although it is unclear from the record who Mehr's supervisor was, the Court will assume that it was Asgari–Rad because this is the individual Mehr consulted with regarding scheduling changes. Asgari–Rad's name does not appear as supervisor on any of the disciplinary write-ups for Turner and Ruffier.

---

**5.** Although Mehr disputes the fact that she ever demanded to work only the bar, Mehr did admit that she complained to Asgari–Rad when she was switched from bar to floor work. When asked during deposition whether she told people she would only work the

bar and not the floor, Mehr responded, "I don't say that. I said if [Asgari–Rad] change me from the bar to the floor without letting me know, I'm going to go home and have to pay for that day." (J.A. at 332).

Therefore, the Court finds that these two individuals are not similarly situated for purposes of the prima facie test.

### b. Pius Imafidon

Mehr states in her brief that, "[a]s a full-time student, Mr. Imafidon could not work except at night and on weekends. Nevertheless, Starwood allowed Mr. Imafidon to be a full-time employee and scheduled him with his restrictions." (Appellant's Br. at 24)(internal citation to record omitted). This is not evidence of a similarly situated employee being treated more favorably. First, there is no indication that Imafidon attempted to dictate the terms of his employment. Second, Imafidon was a banquet captain, not an on-call banquet server. Thus, Imafidon is not similarly situated to Mehr.

### c. Denise Barrios and Leopoldo Doniz

Barrios and Doniz were both full-time banquet servers. Barrios was given a leave of absence for up to six months, Doniz was given a two-month leave of absence. According to Mehr, "the issue was why these employees were allowed to be gone for months at a time, yet retained their positions as fulltime employees." (Appellant's Br. at 25). Mehr does not allege that she sought a leave of absence and did not get one; therefore, Barrios and Doniz are not similarly situated employees who were treated more favorably.

In sum, Mehr has failed to establish a prima facie case for wrongful termination. Therefore, summary judgment on this claim was proper.

### B. Mehr's Whistle-blower Retaliatory Discharge Claim

In the alternative, Mehr claims that Starwood terminated her employment in violation of TENN.CODE ANN. § 50–1–304. Section 50–1–304(a) provides: "No employ-ee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." (emphasis added). Mehr believes that she was terminated because she reported that other employees were drinking on the job.

In order to sustain a cause of action under this statute, Mehr must demonstrate "an exclusive causal relationship between the plaintiff's refusal to participate in or to remain silent about illegal activities and the employer's termination of the employee." *Griggs v. Coca–Cola Employees' Credit Union,* 909 F.Supp. 1059, 1065 (E.D.Tenn.1995) (citation omitted). In this case, Mehr has presented evidence that she complained about employees drinking on the job. However, she has presented no evidence establishing a causal connection, let alone an *exclusive* causal relationship, between her termination and her complaints. Although Mehr believes that it is enough to cast doubt on Starwood's reasons for terminating her, the Court disagrees. In the absence of any evidence that Mehr's complaints about her co-worker's drinking played a role in her termination, summary judgment was proper on Mehr's retaliatory discharge claim.

### C. District Court's Denial of Mehr's Second Motion to Amend Her Complaint

The district court adopted the magistrate judge's report and recommendation wherein he recommended that Mehr's motion for leave to amend her complaint to add retaliation claims be denied. The retaliation claim was based on Mehr's belief that she was retaliated against because she complained to Moradipour about Asgari–Rad's "harassment and discrimination." This Court reviews decisions denying a motion to amend under the abuse of discretion standard. *Parry v. Mohawk Mo-*

*tors of Mich., Inc.,* 236 F.3d 299, 306 (6th Cir.2000).[6]

The magistrate judge observed that Mehr had maintained from the beginning that she was terminated and could have brought this claim before the EEOC, included it in her first pro se complaint, or in her first amended complaint. She was obviously aware that this termination came after the conversation she had with Cindy Moradipour on April 21, 1999, in which she complained that Asgari–Rad was harassing and discriminating against her. In fact, in her objection to the magistrate judge's report and recommendation, she stated:

> When the Plaintiff's manager ordered her to go home, the Plaintiff was upset and complained to the Defendant's personnel director of harassment and discrimination. If the Plaintiff had not complained of harassment and discrimination, the Plaintiff's manager might have eventually allowed her back to work once his anger had cooled. Instead, the Plaintiff's manager appears to have become so angry when she complained to the Defendant's personnel director, that he refused to allow the Plaintiff to work for the Defendant ever again.

(J.A. at 47). Mehr was obviously aware of these facts at the time she filed her EEOC claim, her original complaint, and her first amended complaint (filed on February 8, 2001). Mehr argues that she did not learn of pertinent facts[7] relating to the Personnel Action Form until July, 2001, and it was not until she learned these facts that she became aware that her termination may have been based on her complaints to Cindy Moradipour.[8] As indicated above, however, Mehr argued that "Plaintiff's manager appears to have become so angry when she complained to the Defendant's personnel director that he refused to allow the Plaintiff to work for the Defendant ever again." (J.A. at 47). It is clear then, that at the time of her alleged termination, Mehr had reason to believe that her discharge was in retaliation for her complaints to Cindy Moradipour. The fact that she may have later discovered some additional facts which she believes supports her claim, does not justify the extensive delay in seeking to add the claim of retaliation.

At the time Mehr filed her second motion to amend her complaint on July 30, 2001, the case had been pending for 17 months.[9] In the report and recommendation recommending that the second motion to amend be denied, the magistrate judge noted Starwood's objection to the motion on the grounds that "the amendment will

---

**6.** It was unclear to the magistrate judge whether Mehr was: 1) arguing that the creation of a Personnel Action Form was itself retaliation, or 2) whether Mehr was alleging that her termination was retaliation. The magistrate judge considered the amendment under both theories and concluded that if Mehr was alleging the first, the amendment should be denied as futile. If Mehr was alleging the second, the amendment should be dismissed as untimely. However, on appeal, Mehr is only challenging the district court's denial of her motion to amend as untimely. Therefore, the Court will only consider Mehr's claim that her termination was retaliatory.

**7.** These "facts" are that whereas the termination of other part-time employees was not documented, Mehr believes her personnel file, i.e., the Personnel Action Form, was created to defend against claims of employment discrimination.

**8.** Mehr was aware of the existence of the Personnel Action Form at least by December 15, 2000. A copy of the form was filed in support of Starwood's motion for summary judgment.

**9.** Mehr filed her original complaint on March 2, 2000.

cause undue prejudice to Defendant because of the impending trial and the dispositive motion deadline of October 1, 2001." (J.A. at 35). The report and recommendation was entered on the docket on October 26, 2001, and the district court's order adopting the report and recommendation was entered on November 29, 2001.

Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." However, a district court may deny leave to amend in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendment previously allowed or futility. *Foman v. Davis,* 371 U.S. 178, 184, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In adopting the recommendation of the magistrate judge, the district court implicitly concluded that the motion to file a second amended complaint was untimely and that the amendment of the complaint at such a late stage in litigation would be prejudicial to Starwood.[10] Under these circumstances, the district court did not abuse its discretion in denying Mehr's second motion to amend her complaint.

## D. District Court's Denial of Mehr's Motion to Amend Her Complaint to Add Claims Under the ADEA and ADA

The district court affirmed the magistrate judge's report and recommendation denying Mehr's motion to amend her complaint to add claims of age and disability discrimination based on futility. The Court reviews de novo a district court's denial of a motion to amend based on the legal conclusion of futility. *Hahn v. Star Bank,* 190 F.3d 708, 715–716 (6th Cir. 1999).

The filing of a discrimination charge with the EEOC is a jurisdictional prerequisite to bringing a civil action. *Davis v. Sodexho Cumberland Coll. Cafeteria,* 157 F.3d 460, 463 (6th Cir.1998). Furthermore, claims brought in district court are "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* (citation omitted). In this case, Mehr argues that she presented "evidence to the EEOC which should have prompted an investigation into age discrimination." (Appellant's Br. at 30). The Court disagrees. When asked to give the basis of her discrimination charge in the EEOC Charge Form, Mehr identified the following bases: race, religion, sex, national origin, and "being short 4'10"." (J.A. at 154). Mehr did not indicate age as a basis for her discrimination charge.

■ Mehr argues that the following statement in her EEOC charge was evidence of age discrimination and should have prompted the EEOC to investigate an age discrimination claim: "Jesica, she became a full-time server, because she is 21 yrs old & is a party girl." (J.A. at 156). In this Court's view, this statement would not have reasonably prompted the EEOC to conduct an age discrimination investigation. Therefore, this Court agrees that it would have been futile to allow Mehr to amend her complaint to add claims of age discrimination.

■ The district court also denied as futile Mehr's attempt to add a claim based on disability discrimination, finding that

---

10. Although in his conclusion the magistrate judge recommended denial of the motion because it was untimely, it is clear from the report and recommendation that he recognized Starwood's claim that it would be prejudiced if the complaint were amended so close to the dispositive motion cut-off date and the impending trial date of January 22, 2002.

"being short" is not a disability under the ADA. However, Mehr argues that her claim was that based on her height, she was regarded as having a disability.[11] Mehr's argument is without merit.

In *Andrews v. Ohio*, 104 F.3d 803 (6th Cir.1997), law enforcement officers who failed to meet newly instituted fitness standards because of either weight or cardio-respiratory endurance and strength, and who subsequently were subject to discipline, brought suit under the ADA. The officers alleged that even though they were not actually disabled due to being overweight and lacking in cardio-respiratory endurance and strength, the defendant perceived them to be. *Id.* at 806. This Court rejected that argument by first noting that under federal regulations, the term "impairment" does not include physical characteristics such as height or weight that are within the "normal" range. *Id.* at 808 (citing 29 C.F.R. § 1630.2(h) (App. 1995)). "Accordingly, physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual *or perceived disability*." *Id.* at 808 (emphasis added). Based on *Andrews*, Mehr's disability discrimination claim is futile.

### E. District Court's Granting of Attorney Fees Against Mehr On a Motion to Compel

Mehr argues that the district court abused its discretion in awarding attorney's fees against her because she was acting pro se at the time and did not understand the rules of discovery. The district court affirmed an order of the magistrate judge granting attorney's fees based on a motion to compel Mehr's deposition testimony pursuant to FED. R. CIV. P. 37(a)(4)(A).[12] Decisions of the district court regarding discovery matters are reviewed under the abuse of discretion standard. *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 209 (6th Cir.1995). Abuse of discretion means that the reviewing court "is left with a 'definite and firm conviction that the court below committed a clear error of judgment.'" *Id.* (citation omitted).

The magistrate judge held a hearing on the motion for attorney's fees on December 14, 2000. In his order, the magistrate judge acknowledged that in some situations, a party acting pro se may create a circumstance that "make[s] an award of expenses unjust." (J.A. at 180). However, the magistrate judge found that this was not such a case.

First, the magistrate judge observed that Mehr had some familiarity with the Federal Rules of Civil Procedure because she submitted interrogatories to Starwood, filed at least two motions to compel discovery, and filed a motion for a jury trial. Second, the magistrate judge noted that at her deposition, Mehr refused to answer a

11. The ADA defines "disability" as:
(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.
42 U.S.C. § 12102(2).

12. FED. R. CIV. P. 37(a)(4)(A) provides: "If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action...."

number of questions because in her view, they were not relevant. These questions included whether she had previously given a deposition, whether she had ever filed any lawsuits, questions about her other job as a substitute teacher, and whether she was claiming money damages.

Finally, although during her deposition Mehr refused to answer questions claiming she did not understand them, the magistrate judge found that "Plaintiff had no trouble understanding and responding to questions from the Court. She became more evasive in her responses as the hearing progressed and, based on the Court's observations of her demeanor, Plaintiff's conduct in this regard was clearly intentional." Accordingly, the Court finds that the district court did not abuse its discretion in awarding attorney's fees against Mehr in the amount of $2,945.00.

## Conclusion

For the foregoing reasons, we **AFFIRM** the grant of summary judgment based on Mehr's amended complaint, the denial of Mehr's second motion to amend her complaint to add claims of retaliatory termination, the denial of Mehr's motion to amend her complaint to add claims under the ADA and the ADEA, and the grant of attorney's fees on the motion to compel.