NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0805n.06
Filed: September 27, 2005

No. 04-3734

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LAUREN POPOVICH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CUYAHOGA COUNTY COURT OF | ) | NORTHERN DISTRICT OF OHIO |
| COMMON PLEAS, DOMESTIC | ) | |
| RELATIONS DIVISION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: KEITH and DAUGHTREY, Circuit Judges; WILLIAMS,[*] District Judge

**PER CURIAM.** This litigation arose in the wake of a separate action brought by the father of plaintiff Lauren Popovich, in which he charged a violation of the Americans with Disabilities Act (the ADA), 42 U.S.C. §§ 12111 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*, by the defendant in this case, the domestic relations division of the Cuyahoga County (Ohio) Court of Common Pleas. Citing Title II of the ADA, which prohibits exclusion from public services on the basis of disability, Joseph Popovich alleged that as a "qualified individual with a disability," a hearing impairment, he had been denied access to full participation in litigation involving Lauren's custody when the domestic relations court

---

[*]The Hon. Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

refused to accommodate his disability by supplying transcription assistance that would permit him to hear the court proceedings. *See Popovich v. Cuyahoga Cty. Court of Common Pleas*, 227 F.3d 627 (6th Cir. 2000), *rehearing en banc* 276 F. 3d 808 (6th Cir. 2002), *cert. denied* 537 U.S. 812 (2002). Denied the right to intervene in her father's ADA action, Lauren Popovich later filed her own lawsuit, alleging that her rights under the ADA had been violated, based on her association with a qualified individual with a disability, Joseph Popovich. Specifically, Lauren claimed that she was injured by delays in the custody litigation, which were caused by the domestic relations court's failure to accommodate her father's disability, which in turn deprived her of her father's companionship for a period of five years. She did not claim that she herself had been denied access to the domestic relations court or its services.

The district court granted the defendant's motion to dismiss, holding that the plaintiff had failed to establish standing to sue under either the ADA or the Rehabilitation Act. We find no reversible error and affirm.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

In 1992, Lauren Popovich was the subject of a custody suit filed by her mother against her father in the Cuyahoga domestic relations court, the defendant here. By order of the court, she was named a defendant in the custody case and was appointed a guardian ad litem. In August 1992, during the course of the custody proceeding, the plaintiff's mother filed a second action against Joseph Popovich, charging him with domestic violence. That

complaint resulted in the issuance of a protective order, the effect of which, according to the plaintiff, "was to remove [her] from Mr. Popovich's home and to prohibit him from having any contact with her." The protective order was renewed in June 1993 and, the plaintiff now contends, "[a]s a result, Plaintiff/Appellant was not allowed to visit, either supervised or unsupervised, her father from August 1992 until the fall of 1997." Meanwhile, the custody litigation was drawn out for some two years due to a continuing dispute over the court's obligation under the ADA to provide hearing-assistance facilities for the plaintiff's father. The dispute was apparently resolved in 1994, when the Cuyahoga court agreed to provide transcription services for Joseph Popovich.[1]

On December 29, 2002, on her 20th birthday and over five years after she resumed her relationship with her father, Lauren Popovich filed suit in federal district court, charging discrimination and retaliation in violation of both Title II of the ADA and the Rehabilitation Act. According to the district court, her claims were "[e]ssentially . . . that the Common Pleas Court refused to accommodate her father . . . during the custody proceedings . . . and as a result of the court's conduct she was denied access to her father for about five years." She asserted that, as a defendant in the custody case, "she was discriminated against due to her association with her father, an individual with a disability." In response, the defendant

---

[1]Although the custody dispute may have been resolved in state court, the ADA action filed in federal court in 1995 proceeded to trial and resulted in a jury verdict in favor of Joseph Popovich. On appeal, the verdict was set aside and the case was remanded for retrial. *See Popovich*, 276 F.3d at 818. At the time this case was argued, the retrial had not taken place.

moved to dismiss this case, contending, among other defenses, that the plaintiff did not have standing to sue under the ADA and the Rehabilitation Act.

The district court granted the motion to dismiss, holding that although the ADA provides a cause of action for associational discrimination in access to public services, the plaintiff had not alleged that she was "excluded from participation in the services or activities of a public entity because of . . . her association with a disabled person." The plaintiff now appeals that ruling.

The district court also held that the Rehabilitation Act does not contain a provision prohibiting associational discrimination and dismissed that claim as well.

## II. DISCUSSION

### A. Associational Discrimination under the ADA

As the defendant points out, and as the plaintiff candidly admits, Title II (governing public services) of the ADA – unlike Title I (employment) and Title III (public accommodations) – does not contain an explicit provision prohibiting discrimination by association with a qualified person with a disability.[2] One could argue, as the defendant

---

[2] *See* Title I, in 42 U.S.C. § 12112(b)(4), defining discrimination to include the "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association," and the parallel Title III provision in 42 U.S.C. § 12182(b)(1)(E), making it discriminatory to deny accommodations "to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

does here, that this difference in the plain language of the ADA titles reflects a deliberate choice by Congress not to permit an action under Title II for associational discrimination. If accepted, such an argument would foreclose standing to the plaintiff in this case. However, we have previously held that Title II does encompass a prohibition against associational discrimination, adopting the Second Circuit's analysis in *Innovative Health Systems, Inc., v. City of White Plains*, 117 F.3d 37, 46-48 (2d Cir. 1997).

In *Innovative Health Systems*, the Second Circuit noted the absence of an express prohibition in Title II's definition and discrimination sections but gave a broad reading to Title II's enforcement provision, 42 U.S.C. § 12133, which extends relief to "*any person* alleging discrimination on the basis of disability." (Emphasis added.) The Second Circuit also noted the existence of regulations implementing Title II, one of which provides that "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g). That regulation, the court pointed out, was intended to incorporate "the prohibitions of discrimination on the basis of association from Titles I and III." *Innovative Health Sys.*, 117 F.3d at 47, citing H.R.Rep. No. 485(III) at 51 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 474.

We applied the reasoning of *Innovative Health Systems* to a similar fact situation in *MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002). In both cases, a drug rehabilitation center was denied a zoning permit and brought suit under Title II of the ADA,

claiming a denial of rights based on association with qualified individuals with a disability, *i.e.*, recovering drug addicts. In both cases, the reviewing courts found standing to sue on the basis of the plaintiff's association with disabled persons.

Our opinion in *MX Group* is inapplicable to the facts in this case, however, and the plaintiff's reliance on it to establish her standing to sue in this action is misplaced. Unlike the treatment centers in *Innovative Health Systems* and *MX Group*, both of which were denied permits to operate, Lauren Popovich has not been denied access to or participation in any of the public services covered by Title II. In other words, Lauren Popovich – although allegedly deprived of her father's companionship because of delays in her custody case – has not suffered an "ADA injury." It was for this reason that the district court held that the plaintiff had failed to establish standing under Title II, given the fact that her association with her father did not result in her exclusion from the custody proceedings.

The trial judge also noted that the complaint filed in this case alleged that Lauren had been denied her father's companionship for five years *not* as a result of the proceedings in the custody case – indeed, there is no indication in the complaint concerning the outcome of the custody dispute. Instead, the complaint alleges that Lauren was removed from father's home as the result of the *protective order* issued in a separate case and based on allegations of domestic violence committed against the plaintiff's mother. The complaint further alleges that it was this protective order that prevented the plaintiff from seeing her father for some five years. And although Lauren Popovich echoes her father's criticism that

it was "unfair" to issue the protective order in an *ex parte* proceeding and later to renew it over Joseph Popovich's objection, there is no claim that the issuance or enforcement of the protective order violated the ADA in any respect. Hence, there is no causal connection shown on the face of the complaint between the discrimination allegedly suffered by Joseph Popovich and the injury alleged by his daughter.

## B. Associational Discrimination under the Rehabilitation Act

Although the plaintiff purported to appeal the district court's ruling on her standing under the Rehabilitation Act, she did not discuss that decision in her brief before this court and, thus, appears to have abandoned her appeal of this issue. We nevertheless note that the district court incorrectly concluded that the Rehabilitation Act does not have an associational discrimination component. In fact, just as Title II of the ADA extends relief to "any person alleging discrimination on the basis of disability," 42 U.S.C. § 1233, the Rehabilitation Act's remedies are available to "any person aggrieved" by discrimination based on disability. 29 U.S.C. § 794a(a)(2). As a result, we noted in *MX Group* that associational discrimination claims are viable under the Rehabilitation Act, just as they are under the ADA. *See MX Group, Inc. v. City of Covington*, 293 F.3d at 332; *see also Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997) (because "standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other"); *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d

725, 731 (9th Cir. 1999) (noting that Congress has instructed that both acts are to be interpreted consistently).

### III. <u>CONCLUSION</u>

For the reasons set out above, we AFFIRM the judgment of the district court.