104 F.3d 803
 65 USLW 2520, 6 A.D. Cases 322, 19
A.D.D. 729, 9 NDLR P 104
 Ronald D. ANDREWS, et al., Plaintiffs-Appellants,
v.
STATE OF OHIO; Charles D. Shipley, Director in his official
capacity, Ohio Department of Highway Safety; Superintendent
Thomas Rice, in his official capacity, Ohio State Highway
Patrol, Defendants-Appellees.
 No. 95-3447.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 13, 1996.
Decided Jan. 13, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied Feb. 21, 1997.
 
 1
 John G. Peto (argued and briefed), Reminger & Reminger, Cleveland, OH, for plaintiffs-appellants.
 
 
 2
 David P. Katko (argued), James J. Schubert (briefed), Office of Attorney General of Ohio, Columbus, OH, for defendants-appellees.
 
 
 3
 Before: NELSON and MOORE, Circuit Judges; CLELAND, District Judge.*
 
 
 4
 CLELAND, District Judge.
 
 
 5
 Defendants-appellees are the State of Ohio, the Ohio Department of Highway Safety (through its director in his official capacity) and the Ohio State Highway Patrol (through its superintendent in his official capacity), all to be referred to collectively as "Ohio". Plaintiffs-appellants are 76 law enforcement officers employed by Ohio, and are referred to as the "officers."
 
 
 6
 The officers brought their action under the Americans with Disabilities Act and the Rehabilitation Act contending that they have been discriminated against because Ohio perceives them to be disabled. The officers' work conditions have been negatively affected, they say, because each of them was heavier than Ohio's mandated weight limits or could not meet its fitness standards.
 
 
 7
 The district court adopted a magistrate judge's report and recommendation which found that, because the weight limits were job-related and justified by business necessity, Ohio was entitled to its motion to dismiss. We disagree with the reasoning of the opinion, but find nonetheless that the officers have not sufficiently alleged that they are "perceived to be disabled."
 
 I.
 
 8
 The officers' claims were brought under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq.[1]
 
 
 9
 In August of 1992 the Ohio State Highway Patrol instituted the Highway Patrol Fitness Program ("HPFP") which established criteria, including maximum weight limits, for all of its troopers. Each of the officers appearing in this case failed the required physical examination because he or she was either over the weight limit or failed to come within other criteria, "including but not necessarily limited to, cardio-respiratory endurance and strength" criteria. The officers argue that the weight limits and other criteria are neither necessary nor effective because they are "not job related, nor [are they] consistent with business necessity." Therefore, the officers contend, enforcement of the HPFP constitutes discrimination.
 
 
 10
 The officers aver that, having failed the HPFP, they have been discriminated against by being subject to discipline that has included "oral reprimands, written reprimands, denial of overtime opportunities, deprivation of incentive payments, promotions, and suspensions." The officers allege that Ohio has discriminated against them because, even though they are not in fact disabled due to overweight or an absence of cardio-respiratory endurance and strength, Ohio, based on the test results, perceives them to be. The officers maintain that they can "perform safely and substantially the essential job functions of their position."
 
 
 11
 Ohio moved to dismiss for improper venue and for failure to state a claim at the district court level. The magistrate judge suggested that venue was proper, but that Ohio's motion to dismiss for failure to state a claim should be granted. The district court adopted the report and recommendation. The officers appeal only the portion of the district court opinion regarding the failure to state a claim.
 
 II.
 
 12
 This court reviews de novo a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the determination of whether a complaint states a claim for relief is a question of law. Phoenix Engineering, Inc. v. MK-Ferguson of Oak Ridge Co., 966 F.2d 1513, 1516 (6th Cir.1992), cert. denied, 507 U.S. 984, 113 S.Ct. 1577, 123 L.Ed.2d 146 (1993).
 
 
 13
 The standard to be applied in deciding a motion to dismiss is as follows:
 
 
 14
 This Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. A complaint need only give "fair notice of what plaintiff's claim is and the grounds upon which it rests." A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."
 
 
 15
 In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir.1993) (internal citations omitted) (emphasis in original).
 
 III.
 A.
 
 16
 The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. generally prohibit discrimination by employers against disabled employees. The Americans with Disabilities Act provides:
 
 
 17
 No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
 
 
 18
 42 U.S.C. § 12112(a). The act defines "disability" as:
 
 
 19
 (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
 
 
 20
 (B) a record of such an impairment; or
 
 
 21
 (C) being regarded as having such an impairment.
 
 
 22
 42 U.S.C. § 12102(2).
 
 
 23
 The Rehabilitation Act of 1973, in similar fashion, prohibits discrimination against the disabled in federally funded programs:
 
 
 24
 No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 
 
 25
 29 U.S.C. § 794(a). "Handicapped individual" is defined as:
 
 
 26
 ... any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment....
 
 
 27
 29 U.S.C. § 706(7)(B). A person who is "regarded as having such an impairment" is defined as a person who:
 
 
 28
 (1) has a physical ... impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical ... impairment that substantially limits major life activities only as a result of the attitude of an employer toward such an impairment; (3) or has none of the impairments defined in [29 C.F.R. § 1613.702(b) ] but is treated by an employer as having such an impairment.
 
 
 29
 29 C.F.R. § 1613.702(e).
 
 
 30
 Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other. Wooten v. Farmland Foods, 58 F.3d 382, 385 n. 2 (8th Cir.1995). In order to set forth a prima facie case under either of these statutes, plaintiffs must allege either that they are or are perceived to be handicapped within the definitions of each of the acts, that they are otherwise qualified for the job, and that they were discriminated against on the basis of their disability. Under the Rehabilitation Act, the officers must further allege that the state highway patrol receives federal funds. Jasany v. United States Postal Serv., 755 F.2d 1244, 1250 (6th Cir.1985); Bombrys v. City of Toledo, 849 F.Supp. 1210, 1216-17 (N.D.Ohio 1993). We must determine whether these officers' allegations, taken as true, establish a prima facie case of discrimination on the basis that Ohio perceives them to be disabled.
 
 B.
 
 31
 As explained in this section, we find that the district court should not have dismissed the officers' complaint based on the reasons set forth in its opinion. The district court's opinion notes correctly that fitness and medical tests of the sort administered by Ohio are permissible under certain circumstances. The regulations provide that "[a] covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c). The district court concluded that the HPFP criteria were jobrelated and consistent with business necessity as a matter of law and that the officers' allegations to the contrary were "bordering upon unconscionable when raised in the context of a safety force." The court's conclusion that the fitness and medical criteria are job related may be correct. However, a decision as to whether the HPFP criteria in this case are, or are not, job-related should have been left for resolution based upon evidence. While we agree, as a general proposition, that fitness and medical criteria are undoubtedly closely related to an individual's ability to perform certain jobs in law enforcement, neither the district court nor this court knows what criteria were used in this case. It is therefore impossible to adjudge on the pleadings whether or not the criteria used in this case were job-related or consistent with business necessity.
 
 
 32
 More significantly, we reject the reasoning in the district court opinion because the opinion can be interpreted as misunderstanding the nature of a motion under Rule 12(b)(6) and the elements of a prima facie case of handicap discrimination. The officers explicitly averred that "[t]he weight and other criteria as it [sic] results in the discipline of Plaintiffs, is [sic] not job related, nor is it [sic] consistent with business necessity." The complaint must be read more generously than did the district court, and this allegation taken as true. Such is required by the standard of review. In addition, job-relatedness is not an element of a prima facie case of handicap discrimination. Rather, it is a defense to be presented where a plaintiff has set forth a prima facie case. As we have stated previously:
 
 
 33
 The burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of the plaintiff's prima facie case. (footnote omitted) Once a prima facie case has been presented, the burden shifts to the defendant employer to demonstrate that challenged criteria are job related and required by business necessity, and that reasonable accommodation is not possible. Prewitt v. United States Postal Service, 662 F.2d 292, 306-08 (5th Cir.1981). If the plaintiff fails to establish a prima facie case, it is unnecessary to address the question of reasonable accommodation.
 
 
 34
 Jasany, 755 F.2d at 1249-50. By analyzing the merits of Ohio's case, the district court inappropriately reviewed more than the sufficiency of the officer's complaint. Whether or not the HPFP criteria are job-related does not affect the sufficiency of the officers' pleadings. As explained below, however, the officers' complaint remains fatally flawed.
 
 C.
 
 35
 Although we disagree with the district court's reasoning, we find that dismissal was proper and affirm the district court's decision to grant Ohio's motion to dismiss. City Management Corp. v. U.S. Chem. Co., Inc., 43 F.3d 244, 251 (6th Cir.1994) (on de novo review, the court of appeals may affirm on any grounds supported by the record, even if different from the reasons of the district court); Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985) (same). In order to establish the first element of a prima facie case under the Americans with Disabilities Act or the Rehabilitation Act, the officers must set forth that they are "disabled" (which includes, by statutory definition, being so regarded). To do so, the officers must aver the following: 1) that the officers have a physical or mental impairment or that Ohio perceives them to have such an impairment; 2) that a major life activity is involved; and 3) that the impairment substantially limits performance of that major life activity. 29 U.S.C. § 706(7)(B); 42 U.S.C. § 12102(2).
 
 
 36
 As to the first factor, the officers have averred that Ohio perceives them to be impaired based upon excessive weight and lack of cardio-respiratory endurance and strength. The officers support this contention by alleging that Ohio has taken adverse job actions, including discipline and denial of overtime opportunities, incentive payments and promotions, all because the officers did not fulfill certain of the HPFP criteria. This allegation must be taken as true; however, even when taken to be true, the officers have not properly alleged a perceived "impairment."
 
 
 37
 Federal regulations define "impairment". An impairment can be either mental or physical:
 
 
 38
 (h) Physical or mental impairment means:
 
 
 39
 (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
 
 
 40
 (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.
 
 
 41
 29 C.F.R. § 1630.2(h) (1995). The appendix to this regulation further explains the meaning of this definition:
 
 
 42
 It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight or muscle tone that are within "normal" range and are not the result of a physiological disorder.
 
 
 43
 29 C.F.R. § 1630.2(h) (App.1995).
 
 
 44
 Accordingly, physical characteristics that are "not the result of a physiological disorder" are not considered "impairments" for the purposes of determining either actual or perceived disability.
 
 
 45
 Although a few cases, most notably Cook v. State of Rhode Island Dep't of Mental Health, Retardation, and Hospitals, 10 F.3d 17, 25 (1st Cir.1993), have found morbid obesity to be an impairment, we are presented with a much different case here. In Cook, the state sought to argue that the Cook's morbid obesity was not an impairment. The state contended that since the condition of obesity is mutable and is voluntary, Cook was not impaired. The First Circuit rejected both of these arguments. First, the court noted that Cook had presented evidence that she suffered from a metabolic disorder that was permanent; even if she lost weight by under-eating, the disorder remained. Second, the court rejected the argument that the "voluntary" nature of a "disability".
 
 
 46
 The Rehabilitation Act contains no language suggesting that its protection is linked to how an individual became impaired, or whether an individual contributed to his or her impairment. On the contrary, the Act indisputably applies to numerous conditions that may be caused or exacerbated by voluntary conduct, such as alcoholism, AIDS, diabetes, cancer resulting from cigarette smoking, heart disease resulting from excess of various types, and the like.
 
 
 47
 Cook, 10 F.3d at 24. Beyond that, the court noted that because Cook had proffered evidence that her obesity was caused by a physiological condition, a jury could have concluded that her condition was indeed involuntary. Id.
 
 
 48
 In Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469 (E.D.Va.1994), the Eastern District of Virginia considered whether a former state trooper who was terminated from her position and reassigned as a dispatcher was impaired or perceived to be impaired due to her obesity. The court noted a distinction between simple obesity, as Smaw claimed, and the morbid obesity from which Cook suffered. The court concluded that "it remains unclear whether simple obesity falls within the broad sweep of the definition of physical impairment." Smaw, 862 F.Supp. at 1472-73.
 
 
 49
 The only case which explicitly discusses the applicability of the Rehabilitation Act or the Americans with Disabilities Act to a person who is merely "overweight" without being obese is Tudyman v. United Airlines, 608 F.Supp. 739 (C.D.Cal.1984), although in that case the problem was not that the prospective employee was in poor physical shape, but rather that his conditioning was too good. Tudyman sought to be a flight attendant, but he exceeded the airlines' weight-for-height limit because of his muscle mass: he was a body builder. Despite the ironic difference between that fact and the facts of the case at bar, the court's comments are informative concerning the meaning of "impairment," "disability" or "disorder" based on physical characteristics. The court stated:
 
 
 50
 [P]laintiff's "unique musculo-skelital [sic] system and body composition," as his motion papers describe his condition, are not the result of "physiological disorders," "cosmetic disfigurement," and "anatomical loss,".... His weight and low fat content are self-imposed and voluntary. This distinguishes the present case from one in which the plaintiff's weight was involuntary--e.g., the result of a glandular problem.
 
 
 51
 Tudyman, 608 F.Supp. at 746.
 
 
 52
 The Tudyman court concluded that the plaintiff was not "handicapped" firstly since he had no physical impairment and secondly because his employer did not perceive him to be impaired. Id. Rather, the court concluded that
 
 
 53
 Defendant merely regards plaintiff as not being under a certain weight. For the same reason that the failure to qualify for a single job does not constitute a limitation on a major life activity, refusal to hire someone for a single job does not in and of itself constitute perceiving the plaintiff as a handicapped individual. If this were the case, then anyone who failed to obtain a job because of a single requirement which may not be essential to the job would become a handicapped individual because the employer would thus be viewing the applicant's failure as a handicap. This Court refuses to make the term handicapped a meaningless phrase.
 
 
 54
 Id.
 
 
 55
 The officers in the case at bar have not alleged anything more about a "perceived impairment" than that they have exceeded the HPFP weight limit and that they have failed to meet the HPFP fitness criteria. Thus, the court is presented with a case far more similar to Tudyman than to Cook. Because a mere physical characteristic does not, without more, equal a physiological disorder, where an employee's failure to meet the employer's job criteria is based solely on the possession of such a physical characteristic, the employee does not sufficiently allege a cause of action under these statutes. To hold otherwise would (to paraphrase the Fourth Circuit) distort the "concept of an impairment [which] implies a characteristic that is not commonplace" and would thereby "debase [the] high purpose [of] the statutory protections available to those truly handicapped." The Fourth Circuit, citing to our decision in Jasany, stated:
 
 
 56
 The Rehabilitation Act assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.
 
 
 57
 Forrisi v. Bowen, 794 F.2d 931, 934 (4th Cir.1986) (citing Jasany, 755 F.2d at 1249). Furthermore, we stated in Jasany that "[c]haracteristics such as average height or strength that render an individual incapable of performing particular jobs are not covered by the statute because they are not impairments." Jasany, 755 F.2d at 1249 (emphasis in original). Within their complaint these officers have not averred an impairment or the perception of one; nothing is laid out other than that they have certain physical characteristics that Ohio believes troopers should not possess.
 
 
 58
 In this regard, the case at bar is quite different from other "perception" cases. For example, in Forrisi, the plaintiff suffered from acrophobia, which could be interpreted under the regulations as being an actual mental impairment. In Jasany, the plaintiff had strabismus crossed eyes which is a physiological disorder. As noted above, the plaintiff in Cook was morbidly obese, a disorder that the jury determined had physiological origins. Although each of these plaintiffs suffered from an actual "impairment", each also claimed that the "impairment" was not of the sort that limited his or her ability to perform the job from which each was rejected or terminated. Because they claimed their "impairments" were not limiting, they alleged that their employers either failed to hire them or terminated them based on a perception of disability.
 
 
 59
 The officers herein do not allege that their weights or their cardiovascular fitness are beyond a normal range, nor have they alleged that they suffer from a physiological disorder (which, for example, has produced excessive weight or lack of fitness despite their individual efforts). The allegations, which we take as true, establish only that the officers have certain physical characteristics either being marginally above a weight limit or marginally below a fitness standard which Ohio has deemed inconsistent with the job requirements of certain law enforcement positions.
 
 
 60
 The officers have not alleged that Ohio perceives them to have any impairment. That is, they have not alleged a weight or fitness status which is other than a mere, indeed possibly transitory, physical characteristic; they have not alleged a status which is the result of a physiological condition or otherwise beyond the range of "normal." We thus find that Ohio is entitled to its motion to dismiss.
 
 IV.
 
 61
 For the reasons stated herein, the decision of the district court to grant Ohio's motion to dismiss is AFFIRMED.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The officers originally sought redress under various state law claims in addition to their federal claims. However, the officers voluntarily moved to dismiss these claims pursuant to Rule 41 of the Federal Rules of Civil Procedure. The district court granted that motion and the officers do not appeal that decision