*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0351p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
　　　　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

WATKINS MOTOR LINES, INC.,
　　　　　　　　　　　*Defendant-Appellee.*

No. 05-3218

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 02-00505—Thomas M. Rose, District Judge.

Argued: December 1, 2005

Decided and Filed: September 12, 2006

Before: KENNEDY and GIBBONS, Circuit Judges; DONALD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Daniel Travis Vail, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Katharine C. Weber, CORS & BASSETT, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Daniel Travis Vail, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Katharine C. Weber, Susan R. Bell, CORS & BASSETT, Cincinnati, Ohio, for Appellee.

　　KENNEDY, J., delivered the opinion of the court, in which DONALD, D. J., joined. GIBBONS, J. (pp. 7-8), delivered a separate concurring opinion.

---

## OPINION

---

　　KENNEDY, Circuit Judge. The Equal Employment Commission ("EEOC") brought this employment discrimination action on behalf of Stephen Grindle, alleging the Defendant discharged Grindle because of his morbid obesity in violation of the Americans with Disabilities Act of 1990 ("ADA"). On appeal, the EEOC argues that the district court erred in granting the Defendant's summary judgment motion; specifically, the EEOC argues the court erred in finding that 1) morbid obesity, not related to any physiological cause, is not an impairment under the ADA and 2) the

---

[*] The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

1

Defendant did not perceive Grindle as substantially limited in any major life activities. The Defendant, in addition to arguing we should uphold the district court's order, also argues that the EEOC is prevented from pursuing this action under the doctrine of laches. For the following reasons, we **AFFIRM** the district court's judgment.

## *BACKGROUND*

In August 1990, Stephen Grindle ("Grindle") was hired by the defendant, Watkins Motor Lines ("Watkins"), as a Driver/Dock Worker. Approximately 65% of his time was spent performing dock work including loading, unloading, and arranging freight. The job description for this position notes that the job involves climbing, kneeling, bending, stooping, balancing, reaching, and repeated heavy lifting.

At the time of his hire, Grindle approximates that he weighed about 345 pounds. During the next five years, his weight ranged from 340 to 450 pounds. Grindle knows of no physiological or psychological cause for his weight.

In November 1995, Grindle sustained an on-the-job injury. He was climbing a ladder at the loading dock and a rung broke. He started to fall and caught himself but, in doing so, he injured his knee. The day after the incident Grindle returned to work and worked fifty to sixty hours a week throughout the month of December. However, on January 22, 1996, he commenced a leave of absence for injuries sustained during the November incident. Watkins informed Grindle that they had a policy that any employee who remains on leave of absence in excess of 180 days is terminated, that in order to come back to work he must have a release from his doctor, and that he may be asked to take a physical exam.

After taking his leave, Grindle started treatment for his knee injury with Dr. Zancan. After about 6 months on leave (when his 180 days of leave were almost up), Dr. Zancan gave Grindle a return to work release. Grindle gave the release to Watkins, but Watkins would not accept the return to work release from Dr. Zancan as valid because Dr. Zancan had not yet reviewed Grindle's job demands prior to signing it. Watkins then sent Dr. Zancan a list of Grindle's job demands and a return to work form. Dr. Zancan never responded to the list of demands sent by Watkins, and so Watkins did not accept Dr. Zankin's original release letter.

On June 26, 1996, Watkins ordered Grindle to see the industrial clinic doctor, Dr. Walter Lawrence. Dr. Lawrence found that Grindle had a limited range of motion and that he could duck and squat but he was short of breath after a few steps. Dr. Lawrence also noted that "[o]n physical examination, the most notable item is that the patient weighs 405 lbs." Dr. Lawrence concluded that, even though Grindle met Department of Transportation standards for truck drivers, he could not safely perform the requirements of his job.

Because of Dr. Lawrence's determination that Grindle could not safely perform his job, and because Watkins had not yet received the requested return to work job form from Dr. Zancan after they sent him a list of job demands, Grindle was placed on safety hold. Since he was on safety hold Grindle was eventually terminated as he was unable to return to work in 180 days.

Grindle believed he was discharged because of his weight and so on September 30, 1998, he registered a complaint with the EEOC. On October 30, 2002, the EEOC filed an action in the United States District Court claiming Watkins violated the ADA. On February 9, 2004, Watkins moved for summary judgment. The magistrate to whom this action was referred recommended denying the motion; however, the district court granted Watkins motion, finding that non-physiologically caused obesity is not an "impairment" under ADA. Grindle appeals the district court's judgment.

## STANDARD OF REVIEW

We review the grant and denial of summary judgment de novo. Summary judgment is appropriate, "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating motions for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970). The nonmoving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.2d 335, 339-340 (6th Cir. 1993).

## ANALYSIS

### I. Laches

Watkins argues that the EEOC's claims are barred by laches. Laches is the "negligent and unintentional failure to protect one's rights." *Nartron Corp. v. STMicroelectronics,* 305 F.3d 397, 408 (6th Cir.2002) (quoting *Elvis Presley Enter., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir.1991)). Laches consists of two elements: "(1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party." *Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 206 F.3d 680, 684 (6th Cir. 2000). The pertinent delay for purposes of a case like this is the time that elapsed between the end of the EEOC's conciliation efforts (required in ADA actions) and the filing of the suit. As laches is an affirmative defense, the burden of establishing both of these elements is on the party raising the defense, in this case, Watkins.

The EEOC first argues that the laches defense may not be applied against it as it is a government entity. As we find that Watkins has not met its burden in establishing a prejudicial delay, we decline to decide this issue.[1]

Watkins argues that it is prejudiced because most all of the witnesses memories have faded; however, a review of the witnesses deposition testimony reveals that their memories did not fade to the point where they were unable to answer many questions. Also, there is ample contemporaneous documentation of many of the relevant events in this case. Watkins also argues that its claims have been compromised by the loss of relevant documents. However, Watkins fails to establish that the cause of the loss of these documents was the EEOC's delay in filing suit. In fact, with respect to the "lost" computer data, that loss is attributable to Watkins, rather than the EEOC. *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1533-34 (finding that once a defendant is notified of an EEOC enforcement action, the company should preserve its records as a party "cannot assert the defense of laches merely because it has failed to preserve evidence despite knowledge of a pending claim"). Further, it is unclear to this court whether some of the "lost" documents ever even existed, as Watkins itself admits they are speculating about the existence of some of the evidence. Thus, as Watkins is unable to prove that the EEOC's delay caused it prejudice, we find that Watkins' assertion of the doctrine of laches fails.

---

[1] We note, however, that other circuits, as well as this circuit in an unpublished decision, have permitted the laches defense against the EEOC. *EEOC v. National City Bank*, 1988 WL 136541, **2 (6th Cir. 1988) (unpublished per curiam decision involving an EEOC subpoena enforcement action); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853 (8th Cir. 1978) (affirming summary judgment based on unreasonable delay prejudicing the defendant).

## II. Non-Physiological Morbid Obesity

Under the ADA, employers are prohibited from discriminating against any qualified "individual with a disability" defined as a "physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12102(2)(A). However, individuals who do not actually have a substantially limiting impairment are also covered under the statute if their employer "regards" them as being disabled. 42 U.S.C. § 12102(2)(C). In *Sutton v. United Air Lines, Inc.*, the Supreme Court explained:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 2149-2150 (1999). The EEOC advanced its case under the second prong and argued that Grindle had an actual impairment - morbid obesity - that was regarded, albeit erroneously, as affecting his ability to do his job. Thus, to be successful when pursuing a "regarded as" claim, an employee must allege that he was perceived to have an impairment protected by the ADA (rather than a disability not named in the ADA that is perceived by the employer to be limiting).[2] Thus, we must determine whether non-physiologically caused morbid obesity is an ADA impairment.

The district court  noted that morbid obesity may be an ADA impairment "where it has a physiological cause," but held that *non-physiological* morbid obesity is not an "impairment" under the ADA. District Court Opinion, R. 80.  For the following reasons, we agree.

An "impairment," for purposes of the ADA, is any "physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of [various] body systems." 29 C.F.R. § 1630.2(h)(1).  A "physical impairment" is:

> (A) *any physiological disorder or condition*, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine.

---

[2]We note that the EEOC argues that the district court misapplied the *Sutton* standard, stating that a passage from the district court's opinion was "nearly inscrutable." (Appellant's Br. at 28).  The EEOC stated that the district court "effectively ruled that a plaintiff may *not* prove coverage in a 'regarded as' case by showing an employer mistakenly believed an actual non-limiting impairment substantially limited the plaintiff in a major life activity." *Id.* at 29.  This is not what the district court held.  We think the district court understood the EEOC to be arguing that a perceived impairment (but not one fitting the definition of an "impairment" under the ADA) may  satisfy the requirements of the "regarded as" prong.  In other words, the argument is that an employee suffering from a condition that is perceived by the employer to be both a disability and limiting, but not one that is an impairment as defined by the ADA, is protected. The district court simply held, in line with other decisions, that to succeed on a "regarded as" claim, the perceived condition must be an "impairment" under the ADA. *See Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir.1997) (discussing the ADA and the Rehabilitation Act and holding that "to set forth a *prima facie* case...plaintiff must allege either that they are or are perceived to be handicapped *within the definitions of each of the acts*")(emphasis added); *Francis v. City of Meriden*, 129 F.3d 281, 285 (2d Cir. 1997) (also finding that to bring and ADA or RHA claim, a plaintiff must allege that his employer "regarded him as having an 'impairment' *within the meaning of the statutes*")(emphasis added). Whatever the EEOC actually argued in the court below, we find the district court's statement far from "inscrutable."

45 C.F.R. § 84.3(h)(emphasis added); *Andrews v. State of Ohio*, 104 F.3d 803, 808 (6th Cir.1997). As explained by the Supreme Court in *Sutton*, if a physical characteristic is not an ADA impairment, an employer is permitted to prefer one physical characteristic over another:

> The ADA allows employers to prefer some physical attributes over others, so long as those attributes do not rise to the level of substantially limiting impairments. An employer is free to decide that physical characteristics or medical conditions that are not impairments are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.

*Sutton,* 527 U.S. at 473.

The EEOC acknowledges that "merely being overweight, in and of itself, is generally not considered an ADA impairment." But the EEOC contends the district court blurred the distinction between moderate obesity and morbid obesity. The EEOC puts forth the argument that an impairment may be shown by either: weight problems caused by a physiological condition _or_ morbid obesity (ie. "body weight more than 100% over the norm"), regardless of the cause.

In making this argument, the EEOC relies almost entirely on the one of the last sentences of our decision in *Andrews v. State of Ohio*, a case involving alleged discrimination asserted by police officers who exceeded a police department weight standard:

> The officers have not alleged that Ohio perceives them to have any *impairment.* That is, they have not alleged a weight or fitness status which is other than a mere, indeed possibly transitory, physical characteristic; they have not alleged a status which is the result of a physiological condition or otherwise beyond the range of "normal."

*Andrews,* 104 F.3d at 810. Read individually, the above sentence may suggest that conditions "beyond the range of normal" may lead to a finding of an impairment. However, the above sentence must be read in context with rest of our *Andrews* opinion.

In *Andrews*, we repeatedly emphasized that a physical characteristic must relate to a physiological disorder in order to qualify as an ADA impairment. We first cited to 29 C.F.R. § 1630.2(h)(1) defining a physical impairment as "*[a]ny physiological disorder*, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems." *Id.* at 808. We observed that "physical characteristics that are '*not the result of a physiological disorder*' are not considered 'impairments' for the purposes of determining either actual or perceived disability." *Id.* at 808-809 (emphasis added). Finally, we held that allegations of discrimination asserted by police officers who exceeded a weight standard were insufficient to state a claim under the "regarded as" prong, "[b]ecause a mere physical characteristic *does not, without more, equal a physiological disorder...*" *Id.* at 810 (emphasis added).

In deciding *Andrews*, we relied on two decisions which also emphasized that to qualify as an ADA impairment a physical impairment must be *physiologically* caused. *Id.* at 809; *Cook v. State of Rhode Island, Dep't of Mental Health, Retardation, and Hospitals*, 10 F.3d 17 (1st Cir. 1993) (court finding an ADA impairment where an obese woman established through expert testimony that her obesity was caused by a physiological condition); *Tudyman v. United Airlines,* 608 F.Supp. 739 (C.D.Cal.1984) (finding the plaintiff's condition was not an impairment under the Rehabilitation Act where the plaintiff's "unique musculo-skelital [sic] system and body composition," were not the result of "physiological disorders," "cosmetic disfigurement," or "anatomical loss").

The Second Circuit has interpreted *Andrews* and has also found that we held that an abnormal physical characteristic must be related to a physiological cause to be an ADA impairment.

*See Francis v. City of Meriden*, 129 F.3d 281, 286 (2d 1997) ("[a]greeing" with our holding in *Andrews* and finding that the plaintiff-firefighter's claim that he was disciplined because his weight did not meet a union standard failed because "obesity, *except in special cases where the obesity relates to a physiological disorder,* is not a 'physical impairment' within the meaning of the statutes") (emphasis added).

Thus, read in context, it is clear that we did not intend to hold that *any* abnormal physical characteristic is a potential ADA impairment when we stated that "[the plaintiffs] have not alleged a status which is the result of a physiological condition or otherwise beyond the range of 'normal.'" *Andrews*, 104 F.3d at 810. Rather, we simply intended to emphasize that the plaintiffs' conditions were far from constituting an ADA impairment as, not only were the plaintiffs' conditions not physiologically caused, but they were not even abnormally obese. To interpret the above sentence any other way would suggest that we held that any physical abnormality - for example, someone extremely tall or grossly short - may be ADA impairment. We decline to extend ADA protection to all "abnormal" (whatever that term may mean) physical characteristics. To do so "would make the central purpose of the statutes, to protect the disabled, incidental to the operation of the 'regarded as' prong, which would become a catch-all cause of action for discrimination based on appearance, size, and any number of other things far removed from the reasons the statutes were passed." *Francis v. City of Meriden*, 129 F.3d 281, 287 (2d.1997). Thus, consistent with the EEOC's own definition, we hold that to constitute an ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological condition.[3]

Since we find that Grindle has not shown that he suffers from an ADA impairment, we do not address whether Watkins perceived Grindle as substantially limited in any major life activities.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

[3]We note that, while it need not, our decision is in line with a change in Social Security regulations. In 1999, the Social Security Agency deleted the Impairment Listing for "obesity" standing alone; however, the agency did say it would consider the effects of "obesity" with regard to other listed impairments, such as respiratory impairments, cardiovascular impairments, and muscoloskeletal impairments, all physiological conditions.

---
**CONCURRENCE**
---

JULIA SMITH GIBBONS, Circuit Judge, concurring. I agree with the majority opinion's holding affirming the district court but write separately to emphasize that morbid obesity, as opposed to the general condition of being overweight, may have a physiological cause. The EEOC, however, has put forth no evidence in this case either that Grindle's morbid obesity has a physiological cause or that morbid obesity, because of the nature of the disorder, always has a physiological cause. For this reason, the EEOC cannot defeat the motion for summary judgment.

Under the American with Disabilities Act ("ADA"), an individual is disabled if he has a physical impairment that substantially limits one or more major life activities, or if the individual's employer believes that the individual has such an impairment. 42 U.S.C. § 12102(2). The Supreme Court has laid out two ways in which an individual can be "regarded as" having a disability and fall into the latter of these categories. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). First, an employer can be under the mistaken belief that the employee is disabled, when in fact he is not. *Id.* Second, the employee can actually have a physical impairment, and the employer can know it, but the employer mistakenly believes that the impairment is more disabling than it in fact is. *Id.* The EEOC pursued its case under the second approach. Thus, to make out a case, the EEOC needs to show that (1) Grindle has a physical impairment, (2) Watkins knew of the impairment, and (3) Watkins believed that the impairment limited Grindle's major life activity of working when in fact it did not.

The EEOC has not met its burden on the first part of the test – that morbid obesity is a physical impairment under the ADA and its governing regulations. The regulation defines "physical impairment" as:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1). The EEOC argues that morbid obesity is a "condition," and that by this definition, a "condition," unlike a "disorder," need not have a physiological cause to be considered a physical impairment. Watkins counters that morbid obesity is only a physical impairment if it has a physiological cause. Although a literal reading of § 1630.2(h)(1) suggests that no physiological cause is needed, a closer look at the history of the regulation indicates that this interpretation is not correct.

When the EEOC adopted § 1630.2(h)(1), it stated that its intent was to adopt "the definition of the term 'physical or mental impairment' found in the regulations implementing section 504 of the Rehabilitation Act at 34 CFR part 104." 56 Fed. Reg. 35726, 35740-41 (July 26, 1991). Both at the time the regulation was adopted and today, the Rehabilitation Act regulation defines "physical impairment" as:

> any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine.

34 C.F.R. § 104.3(j)(2)(i)(A) (1991). The difference between the two regulations is slight but important. As noted above, § 1630.2 has a comma separating disorder and condition, whereas § 104.3 does not. This means that under the definition the agency intended to adopt, "physiological" modifies both "disorder" and "condition" rather than just "disorder." In addition to this statement that the EEOC was adopting the definition of § 104.3, the actual definition given by the agency in the Federal Register does not contain the extraneous comma. *See* 56 Fed. Reg. at 35740-41. Finally, the definition of physical impairment for the Rehabilitation Act, 29 U.S.C. § 794, which is often interpreted coextensively with the ADA, likewise does not contain the extra comma. *See* 45 C.F.R. § 84.3(j)(2). Thus, the best reading of § 1630.2 is that the comma following "disorder" is scrivener's error, meaning that the statute requires a "physiological disorder or condition" in order for a "physical impairment" to exist under the ADA.

The limited cases dealing with this issue support the reading that morbid obesity can be a physical impairment if evidence is put forth of a physiological cause. In *Cook v. State of R.I., Dep't of Mental Health, Retardation, and Hosps.*, the First Circuit held that a jury could conclude that morbid obesity is a physical impairment. 10 F.3d 17, 24 (1st Cir. 1993). The court reached this holding after the plaintiff put forth substantial evidence that her morbid obesity was "a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems." *Id.* at 23. The Second Circuit and this court have reached similar conclusions. The Second Circuit stated in *Francis v. City of Meriden* that "a cause of action may lie against an employer who discriminates against an employee on the basis of the perception that the employee is morbidly obese or suffers from a weight condition that is the symptom of a physiological disorder." 129 F.3d 281, 286 (2d Cir. 1997) (internal citation omitted). In that case, however, the plaintiff put forth no evidence of a physiological cause for his being overweight, leading the court to conclude that he did not allege that he had a physical impairment within the meaning of the ADA. *Id.* at 287. Similarly, this court has distinguished cases in which the plaintiff puts forth evidence of a physiological condition from cases in which the plaintiff alleges discrimination only on the basis of a physical characteristic. *Andrews v. State of Ohio*, 104 F.3d 803, 808-09 (6th Cir. 1997) (citing *Cook*, 10 F.3d at 25). Like in *Francis*, however, the plaintiffs in *Andrews* made no showing their weight conditions had a physiological cause. Absent proof of "a [weight or fitness] status which is the result of a physiological condition," we held that the condition did not qualify as a "physical impairment" under the ADA. *Id.* at 810.[1]

At both the district court and on appeal, the EEOC focused its argument on a literal reading of § 1630.2 that a "condition" need not have a "physiological cause" to meet the definition of impairment. The agency has made no showing, to any court, that Grindle's weight condition has a physiological cause. Without such evidence, the EEOC cannot show that Grindle's condition is a "physical impairment" under the ADA and summary judgment is appropriate.

---

[1] It is possible that morbid obesity is a disorder that by its very nature has a physiological cause. This would preclude the need for a plaintiff to put forth evidence that his individual case was caused physiologically. No court or agency has ever adopted this position, however, and the EEOC has put forth no evidence, medical or otherwise, to support such a sweeping conclusion.