JUSTICE MORRIS,
dissenting.
¶17 The United States District Court has asked us, in effect, to define “physical or mental impairment” as used in the MHRA. I agree with the Court that we must turn to federal law to guide us. Opinion, ¶ 8. Luck would have it that the EEOC-the federal commission responsible for enforcing the ADA-has created a regulatory definition that defines “physical or mental impairment.” 29 C.F.R. 1630.2(h)(1). This definition provides, in pertinent part, that “physical or mental impairment” includes “any physiological disorder, or condition” that affects a major system of the human body. 29 C.F.R. 1630.2(h)(1).
¶18 A plain reading of this definition demonstrates that a physiological condition or disorder must affect a bodily system before a person possesses a physical or mental impairment. Thus, a physiological condition must be present before an impairment exists. Obesity accordingly cannot fall within this definition when it does not occur secondarily to a physiological condition or disorder.
¶19 The interpretative guidance that accompanies the definition supports this reading. The “definition of the term ‘impairment’ does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within ‘normal’ range and are not the result of a physiological disorder.” 29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added). The Court construes this statement to mean “that ‘impairment’ requires a ‘physiological disorder’ only if a person’s weight is ‘within normal range.’ ” Opinion, ¶ 12. This construction ignores the conjunctive nature of the interpretative guidance. The guidance plainly provides that a person’s weight qualifies as an impairment only if it falls outside the normal range AND occurs as the result of a physiological disorder. Both requirements must be satisfied before an impairment can be found. The Court’s interpretation would be accurate only if the interpretative guidance provided that physical characteristics should not be *368 considered impairments if the characteristics “are within the ‘normal’ range or are not the result of a physiological disorder.” The EEOC did not write the guidance in the disjunctive.
¶20 Indeed, a reading of the definition’s entire interpretative guidance demonstrates that a physiological disorder or condition represents a threshold issue for determining whether an impairment exists. For example, the guidance provides that “other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments.” 29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added). Similarly, the guidance notes that “[t]he definition of an impairment also does not include common personality traits such as poor judgment or a quick temper where these are not symptoms of a mental or psychological disorder.” 29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added). The guidance, as a whole, makes clear that a physiological condition or disorder must be present before an impairment exists.
¶21 Numerous courts have agreed that obesity must be caused by a physiological disorder or condition before it may be considered an impairment. The Sixth Circuit specifically rejected the notion that weight outside the normal limit may constitute a physical impairment absent a physiological condition. EEOC v. Watkins Motor Lines, Inc., 463 F.3d 436, 442-43 (6th Cir. 2006). Obesity must be secondary to a physiological disorder or condition before it may be considered an impairment. Watkins Motor Lines, Inc., 463 F.3d at 442-43. The court further noted that to conclude that abnormal weight not secondary to a physiological condition constitutes an impairment would require the court to determine that “any physical abnormality ... may be an ADA impairment.” Watkins Motor Lines, Inc., 463 F.3d at 443.
¶22 The Second Circuit similarly agreed that obesity, by itself, does not qualify as an impairment because “physical characteristics that are ‘not the result of a physiological disorder’ are not considered ‘impairments’ for the purposes of determining either actual or perceived disability.” Francis v. City of Meriden, 129 F.3d 281, 286 (2d Cir. 1997). Courts from other jurisdictions that have interpreted similar definitions of impairment conclude that obesity does not qualify as an impairment unless it occurs secondary to a physiological condition. Civil Service Commn. of City of Pittsburg v. Penn. Human Relations Commn., 591 A.2d 281, 322-23 (Pa. 1991); Cassista v. Community Foods, Inc., 856 P.2d 1143, 1152 (Cal. 1993). These cases stand for the proposition that a protected disability must be more than a physical characteristic. The presence of this physiological disorder or *369 condition distinguishes a disability from a mere physical characteristic.
¶23 The Court dismisses this reasoning based on the fact that the ADAAA has superceded these decisions. Opinion, ¶ 12. The ADAAA requires broad construction of disability. Yet, the ADAAA has no effect with regard to the definition of “physical or mental impairment.” The EEOC expressly noted that it made no change to its definition of “physical or mental impairment” because “the legislative history of the Amendments Act notes that Congress ‘expects that the current regulatory definition of [physical or mental impairment] ... will not change.’ ” 29 C.F.R. Pt. 1630, App. § 1630.2(h). Accordingly, the ADAAA’s directive for a broad construction of disability provides no justification to ignore the definition’s plain language or to ignore previous cases interpreting the definition.
¶24 The ADAAA’s effect on the definition is further borne out through the EEOC’s response to the ADAAA. For example, the EEOC made no substantive modification to its “physical and mental impairment” definition following the enactment of the ADAAA. 29 C.F.R. § 1630.2(h)(1) (2008); compare 29 C.F.R. § 1630.2(h)(1) (2011). In particular, the EEOC definition still retains the physiological disorder or condition requirement. 29 C.F.R. § 1630.2(h)(1).
¶25 By contrast, the EEOC substantively modified its definition for the two other elements of a disability in light of the ADAAA. 29 C.F.R. § 1630.2Q) (2008), compare 29 C.F.R. § 1630.2Q) (2011); 29 C.F.R. § 1630.2(i)(2008), compare 29 C.F.R. § 1630.2(i) (2011). The EEOC modified “substantially limits” by instructing that term must be “construed broadly in favor of expansive coverage ...” and that the standard “is not meant to be demanding....” 29 C.F.R. § 1630.2(j)(l)(i). The EEOC further made clear that “substantially limits” does not require that an impairment “prevent, or significantly or severely restrict, the individual from performing a major life activity.” 29 C.F.R. § 1630.2(j)(l)(ii). This modification represents a complete reversal of the “substantially limits” definition pre-ADAAA.
¶26 The EEOC also substantively modified its definition of “major life activity.” The list previously included only physical activity. 29 C.F.R. § 1630.2(i) (2008). The EEOC now has modified the list of major life activity to include non-physical activities such as “speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working ....” 29 C.F.R. § 1630.2(i)(l)(i). The EEOC further directed that “major life activity” “shall not be interpreted strictly to create a demanding standard for disability.” 29 C.F.R. 1630.2(i)(2).
*370 ¶27 These modifications reflect the full extent of EEOC’s response to the ADAAA. The EEOC now instructs that “major life activity” and “substantially limits” shall be construed broadly. The EEOC made no similar modifications regarding the need to construe broadly the definition of a “physical or mental impairment.” The EEOC clearly determined that the ADAAA imposed no changes to its definition of “physical or mental impairment” and imposed no adjustments to how this phrase should be interpreted.
¶28 Congress’s action, in addition to the previously mentioned legislative history, further supports the notion that the ADAAA has no effect on the physiological condition requirement for impairment. Congress specifically directed the EEOC in the ADAAA to change its definition of “substantially limits.” ADAAA, P.L. 110-325, § 2(a)(8). Congress included nothing in the ADAAA, however, regarding any need to revise the EEOC’s regulatory definition of “physical or mental impairment.” Congress did not direct the EEOC to eliminate the physiological condition or disorder requirement of that definition.
¶29 Indeed, Congress conveyed its intent in the ADAAA that “whether an individual’s impairment is a disability under the ADA should not demand extensive analysis.” ADAAA, P.L. 110-325, § 2(b)(5). This stated purpose presumes that the individual actually possesses an impairment, and leads to the suggestion that broad construction applies only with regard to whether that actual impairment constitutes a disability. Congress specifically noted in the ADAAA its disagreement with the United States Supreme Court’s determination that the terms “substantially limits” and “major life activity’ should be construed strictly. ADAAA, P.L. 110-325, § 2(b)(4). Congress made no statement whatsoever with regard to how to interpret “physical or mental impairment.”
¶30 I disagree with the Court’s determination that obesity may be considered an impairment when it occurs without an accompanying physiological condition or disorder. The EEOC regulatory definition requires that a physiological disorder or condition must be present for an impairment to exist. The EEOC did nothing to modify this definition in response to ADAAA. Congress included no directive to the EEOC in the ADAAA to modify its definition of a physical or mental impairment. These factors persuade me to answer the certified question no. I dissent.
CHIEF JUSTICE McGRATH joins in the dissenting Opinion of Justice Morris.
JUSTICE RICE, dissenting.
*371 ¶31 I would answer the certified question “no”-obesity that is not a symptom of a physiological condition is not a “physical or mental impairment” as the term is used in § 49-2-101(19)(a), MCA. I believe the Court’s analysis is flawed because it is premised upon post-event congressional amendments to the ADA that have not been incorporated by the Montana Legislature into the Montana Human Rights Act, rather than the federal court precedent that should guide our decision.
¶32 The seven statements of undisputed fact from the U.S. District Court upon which we are to base our answer to the certified question indicate that the alleged discriminatory conduct occurred in 2008. “On February 6, 2008, BNSF informed Feit he was not qualified for his ‘safety sensitive’ position because of the ‘significant health and safety risks associated with extreme obesity.’ ” Finding of Fact 2. BNSF thereafter suggested that Feit could pursue certain additional options, such as losing weight, but, even so, BNSF did not guarantee a position to Feit if he successfully completed these options.
¶33 The ADAAA did not become effective until January 1, 2009. Pub. L. No. 110-325, 122 Stat. 3553, § 8 (2008). “ We determine the substantive rights between the parties according to the law in effect at the date of injury.’ ” Griffith v. Butte Sch. Dist. No. 1, 2010 MT 246, ¶ 26, 358 Mont. 193, 244 P.3d 321 (quoting Boettcher v. Mont. Guar. Fund, 2007 MT 69, ¶ 14, 336 Mont. 393, 154 P.3d 629 (citation omitted)); see also Anderson v. Werner Enters., 1998 MT 333, ¶ 28, 292 Mont. 284, 972 P.2d 806 (“we adhere to the rule that the substantive rights between parties to an action are determined by the law in effect on the date of the injury .... Further, a statute will not be applied retroactively unless the legislature clearly expressed an intention to so apply it.”). Federal courts addressing ADA claims have held likewise. See Hill v. Verizon Md., Inc., 2009 U.S. Dist. LEXIS 59786 *23, n. 9 (D. Md. July 13,2009) (“The amendments to the ADA are not effective until January 9, 2009, and the Court must use the laws and interpretations of those laws in effect at the time of the complained-of actions.”). To impose liability upon a party based upon law not in effect at the time of the party’s actions violates this principle and raises questions of fundamental fairness. While a legislature may intend legislation to be retroactively applied, see U.S. v. Juvenile Male, 2011 MT 104, ¶ 7, 360 Mont. 317, 255 P.3d 110, Congress did not intend so here. In response to BNSF’s citation to federal authority holding that the ADAAA was not intended to operate retroactively, the Court dismisses the argument because it “overlook[s] the point that we are *372 interpreting Montana statutes, not the ADAAA.” Opinion, ¶ 14. However, we should not be retroactively applying ADAAA principles to interpret Montana law governing a 2008, pre-ADAAA claim.
¶34 Further, the Court overlooks the fact that the Montana Legislature has not adopted corresponding changes to the MHRA in the two legislative sessions since enactment of the ADAAA. The Court presumes that because Congress enacted the ADAAA, Montana law necessarily follows, without pausing to consider that our Legislature has not so directed. When Congress revises federal disability discrimination laws, Montana is faced with the question of whether to revise state laws in the same manner. After congressional passage of the ADA, the Montana Legislature saw fit in 1991 to make corresponding changes in the MHRA, including adding the requirement of “reasonable accommodations” and updating the definition of “physical or mental handicap.” See Mont. H.B. 389, 52d Legis., Reg. Sess.; Laws of Montana, 1991, ch. 241,551. The preamble to H.B. 389 explained that the then-current definitions of physical and mental handicap in state law “lack[ed] clarity and are inconsistent with definitions used in federal civil rights statutes and court interpretations on the subject.” Again, in 1993, the Montana Legislature elected to follow the lead of Congress by exchanging the concept of “handicap” within the MHRA for the concept of “disability.” See Mont. H.B. 496,53rd Legis., Reg. Sess.; Laws of Montana, 1993, ch. 407,1374. The preamble to H.B. 496 explained that “making the state human rights laws consistent with the Americans with Disabilities Act will eliminate some confusion between state and federal laws.” Laws of Montana, 1993, ch. 407, at 1375. Rep. Diana Wyatt, sponsor of the bill, commented in her opening statement that “[t]he purpose of HB 496 is to update terminology used in the Montana Human Rights Law so it is consistent with the terminology used in the Americans with Disabilities Act (ADA).” Mont. S. Comm, on Jud., Minutes of the Hearing on H. Bill 496, 53rd Legis., Reg. Sess. 2 (March 12, 1993). ¶35 However, the Montana Legislature has not yet enacted corresponding revisions to the MHRA based upon the ADAAA. “[T]he Legislature is presumed to act with deliberation and with full knowledge of all existing laws on a subject.” Mont. Sports Shooting Assn. v. State, 2008 MT 190, ¶ 41, 344 Mont. 1, 185 P.3d 1003 (citing Ross v. City of Great Falls, 1998 MT276, ¶ 17, 291 Mont. 377, 967 P.2d 1103). “Moreover, in construing a statute, our job ‘is simply to ascertain and decide what is in terms or in substance contained therein, not to insert what has been omitted....’ Section 1-2-101, MCA.” *373 Hunter v. City of Great Falls, 2002 MT 331, ¶ 14, 313 Mont. 231, 61 P.3d 764.1 believe the Court impinges upon legislative prerogative by-conforming state law to the ADAAA before the Legislature has spoken. ¶36 Consequently, I would look to federal jurisprudence under the ADA for guidance in applying the MHRA to a 2008 claim. I first note that the pertinent language of the ADA and the MHRA are virtually identical. Compare § 49-2-101(19)(a), MCA, defining “physical or mental disability” as: “(i) a physical or mental impairment that substantially limits one or more of a person’s major life activities; (ii) a record of such an impairment; or (iii) a condition regarded as such a impairment;” with 42 U.S.C. 12102(2), defining “disability” as: “(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment.” Further, when interpreting the term “physical or mental impairment,” federal courts have unfailingly required that obesity be caused by a physiological condition to qualify as a disability.
¶37 In Andrews v. Ohio, 104 F.3d 803 (6th Cir. 1997), state troopers alleged under the ADA that the state perceived them as being disabled because they exceeded Ohio’s mandatory weight limits for law enforcement officers. Andrews, 104 F.3d at 805. Citing 29 C.F.R. § 1630.2(h), the 6th Circuit Court of Appeals held that “physical characteristics that are ‘not the result of a physiological disorder’ are not considered ‘impairments’ for the purposes of determining either actual or perceived disability.” Andrews, 104 F.3d at 808.[1] In Francis v. City of Meriden, 129 F.3d 281 (2d Cir. 1997), the plaintiff was disciplined by the City for exceeding the fire department’s weight requirements and alleged that the City perceived him as having a *374 disability based solely on his weight, despite his ability to perform his job duties. Francis, 129 F.3d at 282. The 2nd Circuit Court of Appeals held that the physical characteristic of weight, not the result of a physiological disorder, was not considered an “impairment” under the Act. Francis, 129 F.3d at 286. In Equal Empl. Opportunity Commn. v. Watkins Motor Lines, Inc., 463 F.3d 436 (6th Cir. 2006), the 6th Circuit Court of Appeals held “to constitute an ADA impairment, a person’s obesity, even morbid obesity, must be the result of a physiological condition.” Watkins, 463 F.3d at 443. Consistent with these holdings, the 1st Circuit Court of Appeals, in Cook v. R.I., Dept. of Health, 10 F.3d 17 (1st Cir. 1993), held that a morbidly obese woman was disabled after she presented evidence that her obesity was caused by a physiological disorder. Cook, 10 F.3d at 23-25.
¶38 Numerous federal district court decisions have reached the same conclusion. In a notable recent case, the plaintiff was diagnosed as morbidly obese and brought claims under the ADA against his employer for demoting him and reducing his pay because of the employer’s perception that the plaintiff could no longer perform his job duties, and for failing to provide reasonable accommodation. Hill, 2009 U.S. Dist. LEXIS 59786 at *9-10. There was “no evidence suggesting that Mr. Hill suffered from an underlying physiological condition or disorder.” Hill, 2009 U.S. Dist. LEXIS 59786 at *10. In denying the claim, the federal district court, quoting the 4th Circuit Court of Appeals, observed that “the case law and the regulations both point unrelentingly to the conclusion that a claim based on obesity is not likely to succeed under the ADA,” and concluded that “the case law and regulations weigh heavily against a determination that obesity constitutes a disability.” Hill, 2009 U.S. Dist. LEXIS 59786 at *17-18 (quoting Torcasio v. Murray, 57 F.3d 1340, 1354 (4th Cir. 1995); Smaw v. Commw. of Va. Dept. of State Police, 862 F. Supp 1469, 1472 (E.D. Va. 1994)) (emphasis added).
¶39 BNSF is entitled to be judged under the law that governed alleged discriminatory conduct in 2008. Looking to the appropriate federal jurisprudence for guidance in applying state law to this particular claim, the very strong rule across the federal circuits is that obesity that is not the result of a physiological condition is not a “physical impairment.” I would thus answer the certified question “no.”

 2008 EEOC regulations similarly defined “physical or mental impairment” as: (1 )Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities 29 C.F.R. § 1630.2(h) (2008) (emphasis added). EEOC’s Compliance Manual distinguishes “impairments” from “characteristics,” stating:
It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments. The definition of the term ‘impairment’ does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within ‘normal’ range and are not the result of a physiological disorder.
29 C.F.R. § 1630.2(h) Appx. (2008) (emphasis added).